UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD C. KINZER, *et al.*,

    Plaintiffs,     :    Case No. 2:17-cv-675

    -vs-     Judge Sarah D. Morrison
    Magistrate Judge Chelsey M. Vascura

SERVICE TRUCKING, INC. *et al.*,
    :

    Defendants.

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 33), Plaintiffs' Brief in Opposition (ECF No. 46), and Defendants' Reply Memorandum (ECF No. 55). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**I.    FACTS**

On July 6, 2015, at approximately 9:49 a.m., Plaintiff Richard Kinzer ("Mr. Kinzer") was driving south on U.S. Route 23 in Franklin County, Ohio in his 2004 Saturn Ion. (Mayboroda Depo., 23–24, ECF No. 51-1; Hickok Report., 2, ECF No. 47-12).[1] Ahead of Mr. Kinzer, Defendant Sergiy Mayboroda was also traveling south on Route 23, operating a 2001 Volvo tractor hauling an empty 1999 Dorsey trailer. (Hickok Rep., 2; Mayboroda Depo., 16, 24). The tractor trailer was owned by Mr. Mayboroda's employer, Defendant DC Transportation Services, Inc. ("DC Transport"). (Mayboroda Depo., 10, 12, 16). The weather that morning was clear. (*Id.* at 24).

---

[1] To the extent that many of these exhibits were filed multiple times, the Court will refer to the first place each appears on the docket.

The portion of Route 23 at issue is divided with a grass median. (Hickok Rep., 2). At the intersection of Route 23 and Rowe Road, going southbound, there are four lanes: two designated through lanes, a designated left-turn only lane, and a designated right-turn only lane. (Drew Aff., ¶ 4, ECF No. 33-1). The speed limit is 55 miles per hour and there is no traffic light at the intersection. (*Id.*).

After passing his intended exit, Mr. Mayboroda pulled his tractor trailer over into the right-turn only lane at the intersection of Route 23 and Rowe Road and turned on his four-way flashers. (Mayboroda Depo., 24, 26; Hickok Rep., 2). Roughly 33.75 seconds thereafter, Mr. Kinzer "drifted in a gentle arc" from the far-left southbound through lane over to the right-turn only lane. (Police Report, 1, ECF No. 46-4; Drew Aff., ¶ 4). According to an eyewitness, Mr. Kinzer appeared to suddenly slump over before his Saturn Ion struck the rear left corner of Mr. Mayboroda's tractor trailer at a speed of approximately 58 miles per hour. (Drew Aff., ¶ 4; Photographs, ECF No. 33-5; Haun Aff. ¶ 6, ECF No. 46-5).

Although Mr. Mayboroda admitted that he was contemplating making a U-turn, all of his tires were still straight within the right-turn only lane at the time of the collision. (Stalnaker Depo., 61, ECF No. 38-1; Mayboroda Statement, ECF No. 47-6). The tractor trailer was completely visible; there was nothing preventing southbound vehicles from observing Mr. Mayboroda's stopped tractor trailer at over 1,000 feet away. (Drew Aff., ¶ 4; Police Rep., 2). According to the police report, Mr. Kinzer was "at fault" for the accident because "[h]e failed to maintain reasonable control of his vehicle and ran into a completely stopped vehicle which was outside of the normally traveled part of the roadway." (Police Rep., 2). The police report also indicated that Mr. Mayboroda was not in violation of any traffic code. (*Id.*).

Mr. Kinzer does not remember anything about the accident, including the events leading

up to it. (R. Kinzer Depo., 21–22, ECF No. 34-1). According to Mr. Kinzer's mother, Plaintiff Lisa Kinzer, Mr. Kinzer was "very sick" the night before with a fever and congestion. (L. Kinzer Depo., 48–49, ECF No. 35-1). On the morning of the crash, Mr. Kinzer left work early with symptoms later determined to be consistent with pneumonia. (Dr. Shannon Report, 1, ECF No. 33-7). While chest x-rays taken on July 7 indicated Mr. Kinzer's lungs were clear, he was diagnosed with pneumonia sometime after he was admitted to the hospital. (*Id*; X-ray Report, ECF No. 33-9; Dr. Ortega Depo., 48, ECF No. 36-1). Mr. Kinzer also tested positive for opiates following the crash. (Drug Test Report, ECF No. 33-8). He later reported to medical professionals that he was four months sober at the time of the accident after abusing heroin, alcohol, marijuana, and opiates for the previous five years. (Dr. Shannon Rep., 4).

Following the collision, Mr. Kinzer was diagnosed with a subdural hematoma resulting in severe traumatic brain injury. (*Id.* at 1, 7). Additional injuries included left eye trauma, liver laceration, and facial fractures. (*Id.* at 1). On September 14, 2015, he was discharged to the full-time care of Ms. Kinzer. (L. Kinzer Depo., 7–8; Shannon Rep. 2). As a result of the accident, Mr. Kinzer has undergone physical therapy, occupational therapy, and speech therapy. (R. Kinzer Depo., 24). Mr. Kinzer is unable to walk without assistance and suffers from permanent impairment to his peripheral vision. (*Id.* at 17). He also suffers from memory loss. (*See generally* R. Kinzer Depo.). Mr. Kinzer will require supervision for the remainder of his life although medical professionals note that he has made surprisingly significant progress since the accident. (Dr. Ortega Report, 5, ECF No. 46-10; L. Kinzer Depo., 9).

As part of this litigation, Dr. Bienvenido Ortega examined Mr. Kinzer and reviewed his medical records. (Dr. Ortega Depo., 11, 43, ECF No. 36-1). Initially, Dr. Ortega noted that while he believed Mr. Kinzer suffered from a period of unconsciousness prior to the accident, there

was nothing in the medical records provided to him that pointed to a conclusive medical reason for Mr. Kinzer's sudden loss of consciousness. (*Id.* at 58–59). Dr. Ortega later opined that given Mr. Kinzer's high white blood count right after the crash, he likely "suffered from some type of sudden medical emergency prior to the collision" caused by the beginning stages of pneumonia. (Dr. Ortega Aff., ¶¶ 12–13, 20, ECF No. 47-1).

## II. PROCEDURAL HISTORY

On July 5, 2017, Mr. Kinzer, along with his parents, Lisa and James Kinzer, filed a complaint in the Franklin County Court of Common Pleas. (ECF No. 1-3). On August 2, 2017, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441.[2] (ECF No. 1). Multiple stipulations have been filed since, terminating many of the original defendants to this action. At this juncture, the following claims remain: negligence against Mr. Mayboroda (Count One); respondeat superior against DC Transport (Count Two); negligent hiring, training, and/or supervision against DC Transport (Count Five), and loss of wages and consortium against both Defendants (Counts Seven and Eight). Defendants filed a joint Answer on August 2, 2017. (ECF No. 3).

On August 13, 2019, Defendants moved for summary judgment. (ECF No. 33). Plaintiffs responded on October 3 (ECF No. 46), and Defendants filed their reply brief on October 16 (ECF No. 55). Defendants' Motion for Summary Judgment is now ripe for review.

## III. THE *ERIE* DOCTRINE

Under the *Erie*[3] doctrine, federal courts sitting in diversity apply state substantive law.

---

[2] All plaintiffs are residents of Ohio. (Compl., ¶ 2, ECF No. 2). Mr. Mayboroda is a resident of California and DC Transport has its principal place of business in California. (*Id.* ¶¶ 4, 9).

[3] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The forum state's choice of law rules determines what state law to apply. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). However, "'[w]here neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.'" *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)). Here, the car accident occurred in Ohio and both parties consistently rely upon Ohio law in their memoranda. Consequently, the Court will apply Ohio substantive law.

Conversely, federal courts sitting in diversity apply federal procedural law. *Gasperini*, 518 U.S. at 427. It follows that "[w]hen there is a motion for summary judgment in a diversity case, the provisions of [Fed. R. Civ. P.] 56 control its determination." *Shropshire v. Laidlaw Transit, Inc.,* 550 F.3d 570, 574 (6th Cir. 2008) (internal quotations omitted); *see also Hanna v. v. Plumer*, 380 U.S. 460, 471–74 (1965) (holding that in diversity cases, federal courts should apply on-point Federal Rules of Civil Procedure, unless it directly conflicts with state law and violates either the Constitution or the Rules Enabling Act). Accordingly, Plaintiffs' reliance on Ohio Supreme Court cases interpreting Ohio R. Civ. P. 56 is misplaced. (*See* Pls. Brief Opp., 8, ECF No. 46). Federal Rule of Civil Procedure 56 governs this action.

### IV. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart*

*v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## V. ANALYSIS

In Count One of the Complaint, Plaintiffs allege that Mr. Mayboroda was negligent *per se* for violating Ohio Revised Code §§ 4511.66[4] and 4511.68.[5] (Compl., ¶¶ 21–22, ECF No. 2; *see also* Pls. Brief Opp., 4). And that "as a direct, proximate and foreseeable result of Defendant Mayboroda's negligence, the vehicle [Mr.] Kinzer was operating struck the back of the semi-

---

[4] "(A) Upon any highway outside a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway."

[5] "(A) No person shall stand or park a . . . vehicle, except when necessary to avoid conflict with other traffic . . . in any of the following places: . . . (3) Within an intersection; . . . (16) On the roadway portion of a freeway, expressway, or thruway."

tractor-trailer" causing physical injury to Mr. Kinzer. (Compl., ¶¶ 25–26). Defendants argue that they are entitled to summary judgment because Mr. Kinzer caused the accident by failing to maintain an assured clear distance ahead, and even if he did suffer a sudden medical emergency, "it would only serve to excuse his own negligence, and not shift the issue of proximate causation to Mr. Mayboroda." (Defs. Motion, 12, ECF No. 33).

The elements of a negligence claim are "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio Dept. of Commerce*, 773 N.E.2d 1018, 1025–26 (Ohio 2002). A finding of negligence *per se* means that as a matter of law, the actor breached a duty that it owed to another. *Pond v. Leslein*, 647 N.E.2d 477, 479 (Ohio 1995). It follows that concluding a defendant was negligent *per se* only decides two essential elements of a negligence claim: duty and breach of duty. *Id.* It does not concern the issues of proximate cause and damages. *Id.*

Even if the Court were to find that Mr. Mayboroda violated Ohio Rev. Code § 4511.66 and/or § 4511.68, the proximate causation element is determinative of Defendants' Motion. Two Ohio appellate cases are illustrative. In *Mitchell v. Kuchar*, 2005-Ohio-3717, 2005 WL 1707000, at *1 (Ohio Ct. App. 8th Dist. Jul. 21, 2005), the intoxicated defendant fell asleep at the wheel, which caused his vehicle to end up in the grass on the side of the road. When a third-party slowed down to avoid the defendant's vehicle, the plaintiff rear-ended the third party. *Id.* The plaintiff then asserted a negligence claim against the defendant alleging that he caused the accident between himself and the third-party. *Id.* The Ohio Eighth District Court of Appeals held that the plaintiff's "failure to maintain an assured clear distance broke the chain of causation related to [the defendant's] negligent driving. The violation constituted an independent, intervening act which absolved [the defendant] of liability for the collision" between the plaintiff

7

and the third-party. *Id.* at \*2. In other words, the defendant was not proximately liable for the plaintiff's injuries. *Id.* at \*3.

Similarly, in *Didier v. Johns*, 684 N.E.2d 337, 338 (Ohio Ct. App. 2d Dist. 1996), the defendant was driving on a two-lane road, when he fell asleep and crossed the center line. The plaintiff was following a bus on his motorcycle, coming from the opposite direction. *Id.* When the bus stopped quickly to avoid hitting the defendant, the plaintiff hit the bus and his motorcycle went underneath it. *Id.* The Ohio Second District Court of Appeals held that the plaintiff's violation of the assured clear distance rule constituted an intervening cause of the collision, rendering the defendant's negligence too remote in the causal chain to justify liability. *Id.* at 340–41; *see also Lewis v. Norfolk Southern Ry. Co.*, No. 3:11CV974, 2012 WL 3758838, at \*3 (N.D. Ohio July 31, 2012) (holding that the plaintiff's failure to maintain a clear distance ahead constituted an independent intervening act, neutering any negligence the defendant may have contributed to the collision).

In Ohio, a person violates the assured clear distance rule when "there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *Pond*, 647 N.E.2d at 478 (internal quotations omitted). "[A]n automobile . . . stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law." *Id.* at 478–79 (internal quotations omitted); *see also Didier*, 684 N.E.2d at 341 (explaining that drivers are "obliged to maintain an assured clear distance ahead of [them], and the reasons necessitating the slowing or stopping of the vehicle ahead of [them] are immaterial").

Here, Mr. Kinzer "drifted in a gentle arc" from the far-left southbound through lane to the

8

right-turn only lane before he struck the corner of Mr. Mayboroda's tractor trailer, which was ahead of Mr. Kinzer's vehicle and had been completely stationary for approximately 33.75 seconds. (Drew Aff., ¶ 4; Police Report, 1; Photographs, ECF No. 33-5). The weather was clear, and the tractor trailer was completely visible; there was nothing preventing southbound vehicles from observing it at over 1000 feet away. (Drew Aff., ¶ 4; Police Rep., 2; Mayboroda Depo., 24). Plaintiffs do not dispute these facts. According to the police report, Mr. Kinzer "failed to maintain reasonable control of his vehicle and ran into a completely stopped vehicle which was outside of the normally traveled part of the roadway." (Police Rep., 2). Consequently, there can be no dispute that Plaintiff violated the assured clear distance rule when he struck Mr. Mayboroda's tractor trailer, and in doing so broke the causal chain, absolving Mr. Mayboroda of any liability.

The sudden medical emergency doctrine has no application in this case. Even if it is a defense to Plaintiff's violation of the assured clear distance rule, the sudden medical emergency doctrine does not operate to shift liability from Plaintiff to Mr. Mayboroda. *See Lehman v. Haynam*, 133 N.E.2d 97, 101 (Ohio 1956) (explaining that where the defendant driver is suddenly stricken by illness which he has no reason to anticipate and loses control of his vehicle, *he is not chargeable with negligence*); *Roma v. Estate of Gobbo*, 791 N.E.2d 422, 426 (Ohio 2003) (continuing to recognize the sudden medical emergency defense "as a complete defense to an action based on the asserted negligence of a defendant driver of a motor vehicle"). Mr. Kinzer is suing Mr. Mayboroda, not the other way around.

Considering all of the evidence in the record in the light most favorable to Plaintiffs, including accepting as true that Mr. Kinzer suffered a sudden medical emergency just prior to the crash, there is no evidence to support that Mr. Mayboroda's actions were the proximate cause of

9

the collision. Accordingly, Plaintiffs cannot establish the elements of their negligence claim and Defendants are entitled to summary judgment as a matter of law.

The Court need not address Plaintiffs' remaining causes of action since those claims are derivative of the negligence claim. *Lexington Ins. Co. v. DunnWell, LLC*, 69 N.E.3d 1066, 1077 (Ohio Ct. App. 9th Dist. 2016); *Mender v. Chauncey*, 41 N.E.3d 1289, 1301 (Ohio Ct. App. 4th Dist. 2015).

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED.** Defendants' Motion to Strike the Affidavit of Bienvenido Ortega, M.D., (and other unverified reports) is **DENIED** as moot.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 33). The Court **DENIES** as moot Defendants' Motion to Strike (ECF No. 55). The case is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT COURT